**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA**

v.                                                    Case Number: 3:25-cr-81-WWB-LLL

**EDWARD RAYMOND MELLOR**

---

**SENTENCING MEMORANDUM**

The Defendant, **EDWARD R. MELLOR**, by and through his undersigned attorney, pursuant to Federal Rule of Criminal Procedure 32 and 18 U.S.C. Section 3553(a), submits this memorandum to aid the Court at the sentencing currently set for January 15, 2026, at 10:30 a.m. and asks the Court to consider the following in determining the appropriate sentence herein:

**I.      INTRODUCTION**

How each of us deals with setbacks and challenges in life is shaped by myriad factors: our families, our neighborhoods, our exposure (or non-exposure) to violence and our mental health, among many other factors. Mr. Mellor experienced so much trauma and loss in his childhood, teens and as an adult that it is little wonder that he learned to be dependent on drugs and alcohol. He used it to numb the pain, to help him not feel so much. When substances didn't numb him enough, their use still loosened his inhibitions causing him to act impulsively to the challenges confronting him. That is what happened in this case. Though Mr. Mellor accepts responsibility for what he did, he was so much under the

influence at the time he made that call and sounded off that he barely remembers it. He accepts that he has to pay a penalty for those words but we ask that the Court consider that there was no intent behind them. He and his elderly mother have been suffered in his absence. He worries every day about her health and what he can't do right not to help her. She worries about his health and about dealing with all her medical issues alone. They have lost everyone else in their lives and they have no one else. Mr. Mellor did so much to help his mother, taking her back and forth to her appointments and taking care of things around their home. Their status quo was shattered with a phone call that took all of a few minutes, done quickly out of emotion and without pausing to reflect. He regrets it every day. Unfortunately, he can't go back in time and undo his actions. All he can do now is sincerely apologize, take responsibility, serve his sentence and try to get his life back on track. Mr. Mellor knows that he is responsible for the acts that have led him before the Court. However, he is asking that the Court weigh the context of his actions in deciding an appropriate sentence. Undersigned counsel urges this Court to exercise its discretion and sentence Mr. Mellor to the lowest sentence possible.

     Mr. Mellor pled guilty to making a Threat to Kill the President of the United States, a Class D felony. Mr. Mellor faces a maximum sentence of 5 years. 18 U.S.C. § 871(a). As calculated by the Probation Office, Mr. Mellor has an offense level of fifteen and a criminal history category of V, leading to a guidelines range of 37 to 46 months. Mr. Mellor has been in custody since May 26, 2025.

This Court must impose a sentence that is "sufficient, but not greater than necessary, to comply" with the purpose of sentencing. 18 U.S.C. §3553(a). The goal of sentencing "is to lock in a sentence that is not too short and not too long, but just right to serve of purposes of §3553(a)." *United States v. Irey*, 612 F.3d 1160, 1197 (11th Cir. 2010) (*en banc*). Mr. Mellor respectfully submits that a sentence of time served is reasonable, appropriate and proportional to his offense conduct and is sufficient to satisfy the purposes of sentencing in this case, as set forth in 18 U.S.C. § 3553(a) and that a more restrictive punishment would be greater than necessary. Under the facts of this case, such a sentence will protect the public, provide just punishment, and afford adequate deterrence.

## II.     LEGAL STANDARD

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. §3553(a)(1). The court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* At §3553(a)(2) (A-D).

Section 3553(a) further sets forth the factors that the Court must consider in fulfilling this provision:

1. The nature and circumstances of the offense and the history and characteristics of the defendant.
2. The need for the sentence imposed.
3. The kinds of sentences available.
4. The kind of sentence and the sentencing range….
5. Any pertinent policy statements issued by the Sentencing Commission.
6. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
7. The need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a) (1-7).

### III.  NATURE OF THE OFFENSE/HISTORY AND CHARACTERISTICS

Edward Mellor is a 53-year-old man born in Philadelphia, Pennsylvania. He was born to a young mother, Ramona Mellor, when she was just 17 years old. She and his father were married for 53 years, until his death in July of 2024. While he describes his childhood as a good one without any issues at home or within his family, his personal history belies his rose-colored glasses. There is no doubt that he was loved by his parents. There is also no doubt that he was surrounded by terrible influences, from the rough neighborhood he grew up in to the criminal activity of his extended family. He has normalized multiple traumatic, criminal and abusive experiences,[1] such as his uncles' gang-related and drug-dealing activities, witnessing the violent deaths of friends and being tied to a tree overnight at age 7

---

[1] To assist with providing context and an explanation for Mr. Mellor's behavior in this case, the undersigned retained Dr. Dolly Ferraiuolo, LCSW, to provide an evaluation of Mr. Mellor. Her report is attached as Exhibit 2.

by a relative to prove his toughness. At 11, Mrs. Mellor took him to the first of many mental health practitioners after he witnessed two friends fatally shot for refusing to join a neighborhood gang. Mr. Mellor escaped a similar fate because he ran, but later he was assaulted, resulting in head injuries. At 14, he witnessed another friend die after being struck by a car. A cousin died of a drug overdose, and his paternal aunt committed suicide. Mr. Mellor was admitted to mental health facilities four more times by the time he was 18, including twice for suicide attempts, the first of at least a half dozen such attempts throughout his life.[2]

In spite of all the early troubles within his family, Mr. Mellor loved and cared for both his parents. When his father became critically ill after his parents moved to Florida, he uprooted his life and moved south to help care for him. He has done the same for his ailing mother. Now 70, widowed and in failing health, Mr. Mellor again uprooted his life to move to St. Augustine to be with his mother. With no other living relatives, they are all each other has.[3] While they sometimes get on each other's nerves and sometimes get loud with each other, it is clear that there is a strong bedrock of love and care between them. It is clear that whatever his other flaws, he is a caring and loving son who acts as the only source of care for

---

[2] Much of Mr. Mellor's mental health and medical history as a teen and younger man is documented in his Social Security file. The undersigned received 987 pages of medical records from the Social Security Administration (SSA), dating back to the 1980s. The records are summarized by Administrative Law Judge Sandra Morales Price, who awarded Mr. Mellor disability in 2021. Her order is attached as Exhibit 3. The complete records can be provided upon request.
[3] Ramona Mellor's letter to the Court is attached as Exhibit 1.

5

his elderly mother. Mr. Mellor asks that the Court consider that in deciding an appropriate sentence.

These traumatizing events manifested themselves in Mr. Mellor throughout his early years as evidenced by his early use of alcohol and illicit substances, as well as his failure to complete his education. Mr. Mellor has a long family history of addiction, and alcohol and drugs were readily available when he was growing up. His grandfather owned a bar and most of his relatives had alcohol in their homes. He began drinking when he was 12 by sneaking beer from a relative's refrigerator and taking alcohol from his grandfather's bar. By the time Mr. Mellor got to high school, he was an alcoholic, a disease that has plagued him since. It is the reason he got kicked out of school. Additionally, he would use methamphetamine with his uncles and LSD with his friends. As an adult, he used cocaine and crack. Most of his arrests can be traced back to drugs and alcohol. The reason for the criminal history he has is due to his substance abuse and mental health issues. The Court can certainly take that into consideration in determining an appropriate sentence.

In 2016, Mr. Mellor began a relationship with Tina Golden, who became his common-law wife. Ms. Golden suffered from multiple sclerosis and, sadly, succumbed to complications from the disease in 2022. Mr. Mellor still mourns her deeply. They had no children together. Two years later, his father died suddenly from an aneurysm. Although they had a fraught relationship for much of Mr.

Mellor's life, he mourns him as well. Mr. Mellor moved in with his mother in St. Augustine to help her after his father's death.

Mr. Mellor has tried to address his substance and alcohol abuse over the years. He recognizes the damage it has done to his life and wants change. In September 2023, homeless and suicidal, Mr. Mellor checked himself into rehab at Epic Behavioral Healthcare in St. Augustine. He told them, "I know this is my last chance." Asked by Epic intake staff to describe himself, he answered "stubborn, strong will, wear my heart on my sleeve, big baby, bark bigger than bite…" [4] Mr. Mellor maintained sobriety for several months after his release before relapsing. Mr. Mellor had again gotten sober in 2025 but said he relapsed the day he made the phone call that led to his indictment after hearing on the news that President Trump might take action that would negatively impact his disability benefits. He doesn't remember much about it, saying he was drunk and off his medications. Mr. Mellor is asking that the Court include conditions requiring substance abuse counseling and mental health counseling as part of his sentence.

Mr. Mellor is also asking that the Court give great weight to his medical conditions in deciding whether a downward variance is appropriate. In addition to his alcoholism, Mr. Mellor suffers from myriad medical conditions. He has had a

---

[4] Pertinent records from Epic are attached as Exhibit 4. The undersigned received 40 pages of records from Epic, which can be provided upon request.

pacemaker since 2017 and a steel plate in his head from a 1995 car accident.

Other conditions include:

- Severe bilateral hearing loss requiring hearing aids
- hypertension
- hypothyroidism
- seizure disorder
- pulmonary embolism
- stroke history with left-sided deficits
- cardiac arrhythmia
- aortic aneurysm
- diverticulosis
- gastrointestinal bleed
- anemia requiring blood transfusions
- iron deficiency
- peptic ulcers
- Barrett's esophagus
- hiatal hernia
- GERD
- chronic back pain
- chronic nerve pain
- deep-vein thrombosis
- degenerative spine
- drop foot
- diabetes
- multiple head traumas from childhood and prison violence [5]

These medical conditions are serious and require continuing care. Mr. Mellor is best treated within the community where he can return to doctors who had been treating him and know his history. Another factor for the Court to consider is that many of Mr. Mellor's conditions put him in more danger within a prison setting. Any

---

[5] In addition to his SSA records, Mr. Mellors's medical conditions are documented in pertinent records received from Flagler Hospital, attached as Exhibit 5 and from the Baker County jail, attached as Exhibit 6. In the year before his arrest, Mr. Mellor was seen by doctors at Flagler Hospital four times, including six days before making the phone call that led to his indictment. He has been at the Baker County jail since May. The undersigned received 519 pages of records from these two facilities, which can be provided upon request.

violence visited upon him in prison will have far greater consequences for someone with his health profile than on a younger, healthier man. He is also at increased risk due to the risk to inappropriate or lacking medical attention. Mr. Mellor's health concerns are ongoing. In July, Mr. Mellor was taken by ambulance from the jail to nearby Ed Fraser Memorial Hospital with chest pains. Emergency room staff determined that the pain was caused by Mr. Mellor's digestive issues flaring up.[6] The resources that will need to be devoted to Mr. Mellor's health care while incarcerated will be significant. These are additional reasons that the Court should vary downward.

Sadly, Mr. Mellor also has a myriad of mental health conditions. It is important to note that these conditions have been documented over long periods of time by several different mental health providers. These are not problems recently concocted. He has been diagnosed with bipolar disorder; Post-Traumatic Stress Disorder (PTSD), chronic, with disassociate symptoms; and major depressive disorder, recurrent, moderate, with anxious distress.[7] The psychiatrist at the Baker County jail currently has prescribed Mr. Mellor Risperidone and Duloxetine (Cymbalta). The jail also currently is giving him Naproxen for pain, Famotidine (Pepcid) and Omeprazole (Prilosec) for digestive issues, Metoprolol

---

[6] Pertinent records from Ed Fraser Memorial Hospital are attached as Exhibit 7. The undersigned received 17 pages of records from the hospital, which can be provided upon request.
[7] Documented in SSA, Epic, Flagler Hospital and Baker County jail records.

Tartrate (Lopressor) for his heart and Levetiracetam (Keppra) for seizures and epilepsy.

Mr. Mellor has fully accepted responsibility for his actions in this case. He requests that substance abuse treatment and mental health counseling be made part of whatever sentence he receives. The nine months he has spent in jail is the longest period of sobriety for him since childhood, and he desperately wants to remain sober whenever this case is over.

Mr. Mellor readily admits that his call to the FBI office was not only wrong, but also extraordinarily foolish. He clearly wasn't thinking clearly. He was afraid and upset about news reports he'd heard that said that the Trump Administration was going to cut off social security and disability benefits. These benefits were all that were sustaining him. Faced with very serious health concerns, he did not what he would do to support himself or treat his medical issues without such benefits. He began drinking, as he too often did when faced with difficult, frightening factors. In his drunken state, he made the call. He knows that was wrong, but he never actually meant any harm. Mr. Mellor allowed his resentment to get the best of him. The call was 1-2 minutes long, at best. A guidelines sentence for this type of offense conduct would be much greater than necessary to address the relative seriousness of such conduct. This wasn't a thought out threat. There was no intent behind it. It was just a venting of anger and frustration. Nonetheless, Mr. Mellor understands that words have power and that whether he meant it or not, his

words crossed a line. For that he is sincerely sorry. He was never going to act on those words.

Mr. Mellor asks that the Court sentence him to eighteen months followed by 1 year of supervised release. The supervised release will allow for the Probation Office to monitor him after his release. It will provide a mechanism for providing him with substance abuse treatment and vocational training. These rehabilitative measures are the best specific deterrent to future criminal conduct. Treatment will allow him to better deal with his issues with alcohol and other drugs and vocational training will help him secure lucrative and stable employment. Achieving sobriety and gainful employment are significant factors in deterring future criminal conduct. They are also part of Mr. Mellor's plan for a successful life. The most effective way to protect the public and deter future criminal behavior is to address the underlying issues that Mr. Mellor struggles with.

It is with this information that Mr. Mellor prays the court fashion a sentence that will fairly punish his actions without imposing a sentence that is greater than necessary to achieve the purposes of sentencing.

### V. **CONCLUSION**

For the reasons laid out above and such other reasons that may appear just and proper, Edward. Mellor respectfully asks this Court to impose a sentence of 18 months followed by one year of supervised release. With the conditions recommended above, such a sentence will appropriately punish Mr. Mellor for his

offense conduct, provide adequate deterrence to him and others, appropriately reflect the seriousness of the offense, and protect the community. This sentence is "sufficient but not greater than necessary."

**CHARLES L. PRITCHARD**
**FEDERAL PUBLIC DEFENDER**

Respectfully Submitted By:

*/s/ Waffa J. Hanania, Esquire*
Waffa J. Hanania, Esq.
Assistant Federal Defender
Florida Bar No. 0888631
200 West Forsyth Street, Suite 1240
Jacksonville, Florida 32202
Telephone: (904) 232-3039
Fax: (904) 232-1937
Email: waffa_hanania@fd.org

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 8th day of January 2026, a true copy of the foregoing was served by electronic notification to Kevin Frein, Office of the United States Attorney and Omayra Hernandez, United States Probation Office.

*/s/Waffa Hanania, Esquire*
Waffa Hanania, Esq.